**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY JAMES ROLLER,<br><br>Defendant. | Case No. 08-cr-00361-BLF<br>Case No. 16-cv-00864-BLF<br><br>**ORDER DENYING DEFENDANT'S § 2255 MOTION** |

Defendant Gary James Roller has filed a motion pursuant to 28 U.S.C. § 2255, seeking relief from his conviction and sentence for Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(4)(B). § 2255 Motion, ECF 238.[1] He asserts two claims of ineffective assistance of counsel ("IAC") based on trial counsel's failure to call witnesses that Roller contends would have undermined the testimony of the government's key witness, Homeland Security Investigations ("HSI") Special Agent Lou Strickland, and the reliability of the government's key piece of evidence, a zip disk. Specifically, Roller complains that trial counsel failed to: (1) call a handwriting expert to challenge Agent Strickland's testimony authenticating his own signatures on chain of custody forms; and (2) seek a trial continuance to subpoena HSI Special Agent Mark Taylor, a forensic computer expert employed by the Department of Homeland Security, to testify as a defense witness.

Roller has not requested an evidentiary hearing, nor does the Court find that a hearing is warranted in this case. Having considered the parties' briefing, the record, and the relevant law, the Court DENIES Roller's § 2255 Motion.

---

[1] All ECF citations refer to the docket in Roller's criminal case, Case No. 08-cr-00361-BLF.

## I. BACKGROUND

On February 9, 2011, a grand jury issued a Second Superseding Indictment charging Roller with two counts of child pornography. Second Superseding Indictment, ECF 108. The government ultimately dismissed the first count and Roller waived his right to a jury trial on the second count. Notice of Dismissal and Order, ECF 184; Waiver of Trial by Jury, ECF 196. District Judge Ronald M. Whyte conducted a two-day bench trial on Count 2, Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(4)(B), commencing on February 4, 2013 and concluding on February 5, 2013. Minutes, ECF 198, 199. Roller was represented by lead trial counsel Peter Leeming and assistant counsel Graham Archer. Leeming Decl. ¶¶ 2, 6, Gov't Exh. D, ECF 285-6.

The government presented only two witnesses at trial, HSI Special Agents Anthony Gregory and Lou Strickland. Their testimony is summarized in relevant part below.

### A. Agent Gregory

Agent Gregory, who testified first, described his participation in the execution of a search warrant at Roller's residence on December 5, 2007. Trial Transcript ("Tr.") 10:4-20, Gov't Exh. A, ECF 285-1. Agent Gregory's primary responsibility was to take photographs to memorialize the search. Tr. 10:16-7, 12:17-13:22. A number of Agent Gregory's photographs were admitted into evidence. Tr. 15:12-16:5, 22:11-25:25.

Agent Gregory characterized Roller's residence as "unique" because it "wasn't a regular house in a neighborhood," but rather a boxy structure with a yard containing boats and trailers, surrounded by a big chain link fence. Tr. 10:22-11:5. Agent Gregory's photographs included the locked gate at the entrance of the property; the front door of the residence; the ground floor, consisting of a front office, back office, and warehouse/workshop space; and the second floor, consisting of a living area, kitchenette, bathroom, and bedrooms. Tr. 16:7-19:4, 22:25-25:13. The photographs also documented computers, zip disks, and magazines found on the premises. Tr. 17:6-18, 18:10-17. On cross-examination, Agent Gregory testified that he did not turn the computers on to determine whether they were operable. Tr. 27:1-11.

### B. Agent Strickland

Agent Strickland testified that Roller was the target of a Homeland Security investigation and that a search warrant was executed at Roller's residence on December 5, 2007. Tr. 35:15-21, Gov't Exh. A, ECF 285-1. As the team leader and designated finder for the search, Agent Strickland's role was to view all evidence and decide what to seize. Tr. 36:13-19. He stated that the items seized at Roller's residence included computers, a zip disk reader connected to one of the computers, 18 zip disks, and several magazines containing photographs of nude female minors with their genitalia exposed. Tr. 40:16-41:13, 43:11-45:7, 47:22-49:18. It did not appear to Agent Strickland that anyone other than Roller lived at the residence. Tr. 51:13-15.

One of the seized zip disks was admitted into evidence as Government Exhibit 16, and a screen shot of that disk's directory was admitted into evidence as Government Exhibit 17. Tr. 42:13-18, 52:24-53:5. Agent Strickland testified that he first reviewed the zip disk within weeks after it was seized, using a zip disk reader hooked up to a laptop computer kept specifically for child exploitation investigations. Tr. 52:8-17. He stated that the zip disk contained more than 200 images of nude and partially nude female minors, videos of minors, and aerial photographs of Roller's property, and that the zip disk's directory showed that all of those files were created in 2005 and had not been modified since. Tr. 53:23-55:8, 56:10-15, 62:1-17. Agent Strickland believed the girls in the images on the zip disk were minors because of their size, lack of pubic hair, and lack of breast development. Tr. 59:4-11. At the conclusion of his direct testimony, Agent Strickland explained that he had failed to "write protect" the zip disk while examining it, and that as a result the zip disk's last access date had been modified. Tr. 63:14-64:8. However, he stated that the "created" and "modified" dates for the files contained on the zip disk had not been affected. *Id.*

On cross-examination, defense counsel pressed Agent Strickland about his failure to write protect the zip disk, suggesting that in addition to modifying the last access date, Agent Strickland's examination of the zip disk had caused data to be written to the disk. Tr. 73:1-16. Agent Strickland stated that he was not aware of any data written to the zip disk other than the last access date, which had been modified to March 6, 2009. Tr. 73:1-74:6. Agent Strickland

conceded that he had accessed the zip disk multiple times – a number he characterized as "less than ten" – without write protection. Tr. 75:11- 76:4.

Defense counsel asked Agent Strickland if he was aware that HSI Special Agent Mark Taylor, a forensic computer expert, had written a report documenting Agent Strickland's failure to use write protection while reviewing the zip disk. Tr. 74:11-13. Agent Strickland confirmed that he was aware of Agent Taylor's report, but stated that he had not reviewed the report recently. Tr. 74:7-14. Defense counsel asked Agent Strickland whether he was aware that Agent Taylor had documented in his report: (a) witnessing Agent Strickland accessing the zip disk without write protection enabled; (b) providing Agent Strickland with a laptop that had write protection capability; (c) and reprimanding Agent Strickland for writing "a dir list txt file to the LLT directory" of the zip disk. Tr. 74:11-17, 83:14-21, 90:19-21. Agent Strickland did not recall those events, and his recollection was not refreshed by looking at Agent Taylor's report. Tr. 74:21-75:5, 83:14-22, 90:19-24, 95:14-96:9.

Defense counsel also questioned Agent Strickland about the chain of custody of the zip disk and, specifically, whether his signatures on the HSI chain of custody forms actually were his own. Tr. 78:5-79:9, 80:7-12. Agent Strickland testified that they were his signatures. *Id.*

**C.     Stipulation**

Upon the completion of Agent Strickland's testimony, the government read the following stipulation into the record:

> The government and Defendant Gary James Roller hereby stipulate for purposes of trial of this action that the following facts are conclusively established beyond a reasonable doubt and therefore are not in dispute.
>
> One, the Fuji film zip disk marked for identification as Government's Exhibit 16 was manufactured outside the state of California.

Tr. 99:1-10. Judge Whyte requested and received Roller's verbal assent to the stipulation. Tr. 99:22-100:1. The government then rested its case. Tr. 100:3-5.

**D.     Roller's Rule 29 Motion for Judgment of Acquittal**

After the government rested, the defense moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Tr. 100:7-9. The defense did not put on any evidence.

Tr. 106:8-22. Counsel presented their arguments on the Rule 29 motion in conjunction with their closing arguments, after which the court set a date for issuance of a verdict. Tr. 110:5-132:14.

### E. Conviction and Sentence

Judge Whyte issued a guilty verdict orally on the record on February 11, 2013, and he issued written Findings, Order on Rule 29 Motion and Verdict ("Verdict") on February 12, 2013. In his written Verdict, Judge Whyte noted that the government was required to prove the following elements beyond a reasonable doubt in order establish Roller's guilt of the charged offense:

> First, that the defendant knowingly possessed matter that he knew contained visual depictions of minors engaged in sexually explicit conduct;
>
> Second, the defendant knew the visual depictions contained in the matter showed minors engaged in sexually explicit conduct;
>
> Third, the defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and
>
> Fourth, that the visual depictions had been either
> a)  transported in interstate or foreign commerce, or
> b)  produced using material that had been transported in interstate or foreign commerce by some means.

Verdict at 2, ECF 202 (citing 18 U.S.C. § 2252(a)(4)(B), 9th Cir. Crim. Jury Instr. 3.1 (2010)).

Judge Whyte found that "[t]he only element seriously disputed was the fourth: whether the Government proved that the visual depictions had been produced using material that had been shipped in interstate commerce." Verdict at 2. He briefly discussed the first three elements, finding that "circumstantial evidence leaves no doubt that defendant knowingly possessed the disk and knew of its contents." *Id.* at 3. He determined that Roller lived alone and the residence was secured; the zip disk was found in Roller's office near a computer with an attached external zip drive, showing that Roller had the means to download files onto the zip disk; the zip disk contained both child pornography and images of Roller's premises, all stored close in time to each other, indicating that Roller is the one who stored the child pornography; and magazines found in the residence suggested that Roller had an interest in keeping that type of pornography. *Id.* Judge Whyte also found that "anyone who looked at the images would realize that they depicted minors." *Id.*

With respect to the fourth element, the question before Judge Whyte was whether the visual depictions had been "produced" using material that had been transported in interstate or foreign commerce. Verdict at 3-4. The parties stipulated that the zip disk was manufactured outside of California. *Id.* at 3. Judge Whyte thus had to decide whether the pornographic images were "produced" using the zip disk. *Id.* at 4. After considering the cases cited by both sides, Judge Whyte concluded that "the images were 'produced' with materials from interstate or foreign commerce" when the images were copied onto the zip disk which was manufactured outside of California. *Id.* at 4-5. Judge Whyte opined that the fourth element would be met even if Roller did not do the copying, that is, even if the images were placed on the zip disk before Roller acquired the disk. *Id.* at 4. However, Judge Whyte concluded that to the extent the fourth element would be met only if Roller copied the images onto the zip disk, "the circumstantial evidence establishes beyond any reasonable doubt that defendant loaded the pornographic images on to the disk." *Id.* at 5. Having found that the government had proved all elements of the charged crime beyond a reasonable doubt, Judge Whyte denied Roller's Rule 29 motion and found him guilty of a violation of 18 U.S.C. § 2252(a)(4)(B). *Id.* at 5.

Judge Whyte sentenced Roller to 24 months of imprisonment followed by 5 years of supervised release. Minute Entry, ECF 207. Judgment was issued on May 20, 2013. Judgment, ECF 2011. The judgment was affirmed by the Ninth Circuit on December 2, 2014, and Roller's petition for writ of certiorari was denied by the Supreme Court on March 2, 2015. *Roller v. United States*, 135 S. Ct. 1512 (2015); *United States v. Roller*, 586 F. App'x 299 (9th Cir. 2014). Roller has completed his term of imprisonment, and his term of supervised release will terminate on November 6, 2019. United States' Notice, ECF 283.

### F. § 2255 Motion

On February 22, 2016, Roller timely filed the present § 2255 Motion before Judge Whyte along with a Supplemental Memorandum. § 2255 Motion, ECF 238; Suppl. Memo., ECF 239. The case was reassigned to the undersigned on November 3, 2016. Order Reassigning Case, ECF 266. The government thereafter moved for a waiver of Roller's attorney-client privilege as to his trial counsel, Peter Leeming and Graham Archer. Motion for Waiver, ECF 268. The Motion for

Waiver was granted on February 6, 2017. Order Granting Motion for Waiver, ECF 272. Roller filed a Supplemental Narrative in support of his § 2255 Motion on May 4, 2017. Suppl. Narrative, ECF 278.

On July 7, 2017, the government filed its Response in opposition to the § 2255 motion. Gov't Response, ECF 285. The government attached several exhibits to its Response, including excerpts of the trial transcript and a declaration of Roller's lead trial counsel, Peter Leeming ("Leeming Declaration"). *Id.*

On September 7, 2017, Roller filed a "Response to Government's Opposition" in reply (hereinafter "Reply"). Reply, ECF 292. He also filed a "Response to Peter Leeming's Declaration," which is signed under penalty of perjury and which the Court construes as a declaration (hereinafter "Roller Declaration"). Roller Decl., ECF 293.

## II. LEGAL STANDARD

### A. Section 2255

A prisoner in federal custody may move to vacate, set aside, or correct his sentence based on a claim that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

"[A] district court may not *summarily dismiss* a petition without holding an evidentiary hearing unless the petitioner fails to allege facts which, if true, would entitle him to relief, or the petition, files and record of the case conclusively show that he is entitled to no relief." *United States v. Rodriguez-Vega*, 797 F.3d 781, 792 n.11 (9th Cir. 2015). However, where the district court orders an expansion of the record – for example by directing the government to file a declaration from the movant's former counsel in opposition to an IAC claim – an oral hearing frequently is not necessary. *Id.* at 791-92. Accordingly, an evidentiary hearing is required only if: (1) the § 2255 movant alleges "specific facts which, if true, would entitle him to relief"; and (2) "the [§ 2255 motion], files and record of the case cannot conclusively show that he is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

7

**B.   Ineffective Assistance of Counsel**

The Supreme Court set out a two-prong test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the movant must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688 (1984). Second, the movant must establish prejudice resulting from counsel's deficient performance. *Id.* at 694.

To show deficient performance under the first prong, the movant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* To show prejudice under the second prong, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**III.   DISCUSSION**

Roller contends that his trial counsel was deficient in two respects. First, he claims that counsel should have called a handwriting expert to challenge Agent Strickland's testimony authenticating his own signatures on chain of custody forms for the zip disk. § 2255 Motion ¶ 12, ECF 238. Roller presents a letter from M. Patricia Fisher, Diplomate, Board of Forensic Document Examiners, stating that prior to trial she informed Mr. Leeming that at least one set of Agent Strickland's purported signatures on the zip disk chain of custody forms were not signed by him. Suppl. Memorandum at 6 & Exh. 2, ECF 239.

Second, Roller claims that counsel should have called Agent Taylor to testify as a defense witness. § 2255 Motion ¶ 12. Roller presents excerpts of Agent Taylor's report, which was referenced during the trial, in which Agent Taylor stated that "computer forensic review/analysis of electronic media" should be done utilizing "stringent protocols." Suppl. Memo. at 7 & Exh. 3, ECF 239. According to Agent Taylor, those protocols include ensuring verifiable chain of custody and using techniques to "assure integrity of the data." *Id.* Agent Taylor reported that

when he examined the zip disk, he observed a "dirlist.txt" file which caused him to believe that Agent "Strickland had inadvertently caused 'a write' to occur" on the zip disk. Suppl. Memo. Exh. 3 at 5. Roller alleges that Agent Taylor was on the government's witness list and defense counsel expected to elicit testimony from Agent Taylor, but that on the morning of trial the government announced that it would be calling only Agents Gregory and Strickland. Suppl. Memo. at 6-7. According to Roller, "[t]he government's decision not to call Agent Taylor should have caused movant's counsel to seek leave of court to produce Agent Taylor as a defense witness." *Id.* at 7.

### A. Evidentiary Hearing

Roller has not requested an evidentiary hearing, and the Court concludes that no hearing is required. The record has been expanded by both parties and now includes, among other documents, a declaration from Peter Leeming, Roller's lead trial counsel; a declaration from Roller; a letter from Ms. Fisher, the handwriting expert referenced in Roller's § 2255 Motion; and excerpts of the report prepared by Agent Taylor. That record and the briefing "conclusively show that [Roller] is entitled to no relief." *Howard*, 381 F.3d at 877; *see also Rodriguez-Vega*, 797 F.3d at 791 ("An oral hearing is not necessary in all cases. Frequently, as here, an expansion of the record accompanied by supplemental briefs will suffice [ ].").

Turning to the merits of Roller's IAC claims, the Court concludes that he has not satisfied either prong of *Strickland*, deficient performance or prejudice.

### B. Deficient Performance

To satisfy *Strickland's* first prong, Roller must show that his "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. Roller argues that counsel's failure to call Ms. Fisher and Agent Taylor as defense witnesses was deficient because their testimony would have undermined the testimony of the government's key witness, Agent Strickland, and the reliability of the government's key piece of evidence, the zip disk. Suppl. Memo. at 11, ECF 239. Roller contends that "there was no strategic reason not to call Agent Taylor and Ms. Fisher." *Id.* at 15.

9

The government presents Mr. Leeming's declaration[2], stating as follows:

> Mr. Roller contended that the case against him was fabricated by government agents and wanted to present a defense along those lines. After reviewing the evidence . . . I did not believe such a defense was viable and that in fact such a defense would be counterproductive.

Leeming Decl. ¶ 5, Gov't Exh. D, ECF 285-6.

Mr. Leeming instead chose to pursue a technical jurisdictional defense based on lack of proof "that the visual depictions of child pornography were mailed, shipped, or transported in interstate or foreign commerce, or produced using material that had been mailed, shipped, or transported in interstate or foreign commerce by computer or other means." *Id.* ¶ 9 and n.1. Mr. Leeming encouraged Roller to waive a jury in order to present that technical defense "before a seasoned judge who would not be prejudiced by the nature of the evidence." *Id.* ¶ 9.

Because Mr. Leeming felt that a defense that Roller had been framed by law enforcement would be counterproductive, he declined to call Ms. Fisher to challenge Agent Strickland's testimony authenticating his signatures on chain of custody forms. *Id.* ¶¶ 12-13. Mr. Leeming was prepared to cross-examine Agent Taylor regarding Agent Strickland's failure to write protect the zip disk. *Id.* ¶ 11. However, when the government announced on the morning of trial that it would not call Agent Taylor in its case-in-chief, the defense was not able to call him because the defense had not independently subpoenaed him. *Id.* ¶ 11. Mr. Leeming did not seek a trial continuance to subpoena Agent Taylor, but "because the primary focus of Mr. Roller's defense was the lack of an interstate nexus," Mr. Leeming did "not believe the omission of this testimony was material or detrimental to Mr. Roller." *Id.*

"An ineffective assistance of counsel claim will fail if the conduct can be readily explained as reasonable trial strategy." *Mendez v. Swarthout*, No. 16-15026, 2018 WL 2077278, at *2 (9th Cir. May 4, 2018). Mr. Leeming's decisions not to present a defense that law enforcement agents had framed Roller, and instead to focus on a technical jurisdictional defense, "appear to be

---

[2] Although Roller was represented at trial by both Mr. Leeming and Mr. Archer, the government has focused its response on Mr. Leeming because he was the lead trial counsel, who hired Mr. Archer to assist. Opp. at 1 n.1, ECF 285. Roller has not objected to the government's approach. Reply, ECF 191.

decisions within the reasonable discretion of counsel in coordinating his overall litigation strategy." *Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998).

Roller argues that Mr. Leeming's trial strategy was not reasonable in light of Judge Whyte's prior rejection of an interstate commerce defense during proceedings held on June 13, 2011. Roller Decl. at 15, ECF 293. However, the interstate commerce issue addressed by Judge Whyte at the June 13, 2011 hearing was whether the affidavit which supported the search warrant of Roller's residence contained facts adequate to show that Roller had downloaded child pornography from sites outside of California. Tr. of 6/13/2011 Proceedings, ECF 219. Judge Whyte ruled that the affidavit contained sufficient facts to show probable cause that Roller's purchase of child pornography from multiple sites over a two-year period involved interstate commerce or transportation of the images over state lines. *Id.* at 14:11-21. Judge Whyte did not address the defense presented by Mr. Leeming at trial, that the download of child pornography onto a *zip disk* manufactured out of state was insufficient to meet the fourth element of the charged offense. *Id.*

Roller disputes certain factual assertions made by Mr. Leeming in his declaration, for example, that Roller agreed as a condition of representation that Mr. Leeming would make all tactical decisions, including what defense would be presented. *Compare* Leeming Decl. ¶ 5, ECF 285-6, *with* Roller Decl. at 2, ECF 293. Those factual disputes are immaterial to the issue before the Court at the first prong of the *Strickland* analysis, that is, whether Mr. Leeming's decision to pursue a technical jurisdictional defense rather than a defense that law enforcement agents had framed Roller "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Finally, Roller argues for the first time in his Reply that Mr. Leeming should have cross-examined Agent Strickland about the fact that the screen shot of the zip disk directory, admitted into evidence as Government Exhibit 17, appears to show two subdirectories with "created" and "modified" dates of August 30, 2012. *See* Government Exhibit 17, Gov't Exh. D, ECF 285-5. Agent Strickland testified that he reviewed those subdirectories, titled "April 18, 2005" and "LLT," but he did not testify as to their creation dates. Tr. 90:8-12. Rather, he testified that all of

images which were introduced at trial were located both in the zip disk's main directory and in the LLT subdirectory, and that all of those image files were created and last modified in 2005. Tr. 55:1-58:24. Government Exhibit 17 clearly shows that all of the files listed in the main directory were created and last modified in 2005. *See* Government Exhibit 17, Gov't Exh. D, ECF 285-5. Under these circumstances it is unclear what, if any, benefit would have been obtained by cross-examining Agent Strickland about the two subdirectories dated August 30, 2012. This is particularly true given Mr. Leeming's decision not to pursue a law enforcement misconduct defense. Accordingly, even if it were to consider Roller's Reply argument that counsel's cross-examination of Agent Strickland was deficient – an argument outside the scope of the § 2255 Motion – the Court would conclude that Roller is not entitled to relief.

The § 2255 Motion thus is subject to denial on the ground that Roller has not established deficient performance by his trial counsel. The record and briefing conclusively show that Mr. Leeming's representation did not fall below an objective standard of reasonableness.

**C.     Prejudice**

Although the Court's determination with respect to the first prong of the *Strickland* test is dispositive, the Court briefly addresses the test's second prong for the sake of completeness. To show prejudice under the second prong, Roller must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the bench trial would have been different. *Strickland*, 466 U.S at 694. Roller does not assert prejudice at all in his § 2255 Motion or his two opening briefs. *See* § 2255 Motion, ECF 238; Suppl. Memo., ECF 239; Suppl. Narrative, ECF 278. Roller does state conclusorily in his Reply that "Movant's life became a litany of prejudice and suffering, as a result of Mr. Leeming's decisions." Reply at 4, ECF 292. That statement, which is devoid of any factual support or specifics, is insufficient to establish prejudice resulting from counsel's failure to call Ms. Fisher and Agent Taylor as defense witnesses.

To the extent Roller assumes that Judge Whyte would have rendered a verdict of not guilty had Ms. Fisher and Agent Taylor testified, such assumption is purely speculative. As discussed above, Agent Strickland testified that his signatures on the chain of custody forms were, in fact,

his. It is unlikely that Judge Whyte would have disregarded Agent Strickland's authentication of his own signature based on the testimony of a handwriting expert. Moreover, Agent Taylor's report at most suggested that Agent Strickland had been careless in his review of the zip disk without write protection. Nothing in the report indicated that Agent Strickland or anyone else planted the numerous images showing child pornography on the zip disk found in Roller's home. For Roller to demonstrate prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Roller has not met that standard here.

Roller's § 2255 Motion therefore is DENIED.

### D. Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under this standard, the Court concludes that Roller is not entitled to a certificate of appealability. No reasonable jurist would find debatable Roller's failure to demonstrate entitlement to relief under *Strickland*.

## IV. ORDER

IT IS HEREBY ORDERED that:

(1) Roller's § 2255 Motion is DENIED; and

(2) The Court DECLINES to issue a certificate of appealability.

Dated: May 21, 2018

_____
BETH LABSON FREEMAN
United States District Judge