# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY ROLLER,<br><br>Defendant. | Case No. 08-cr-00361-BLF<br><br>**ORDER FINDING THAT DEFENDANT HAS VIOLATED THE CONDITIONS OF HIS SUPERVISED RELEASE**<br><br>[Re: ECF 297] |

On June 11, 2018, United States Probation Officer Janie Zhuang filed a Form 12 charging Defendant Gary Roller with violating the terms of his supervised release. The Court held an evidentiary hearing on December 18, 2018, and it accepted supplemental briefs filed by Defendant and the Government on January 8, 2019 and January 22, 2019, respectively.

For the reasons set forth below, the Court finds by a preponderance of the evidence that Defendant VIOLATED Standard Condition Number 3 as set forth in Charge 1 of the January 11, 2018 Form 12.

**I.     BACKGROUND**

On May 20, 2013, a judgment of conviction was entered against Defendant on Count 2 of the Second Superseding Indictment, Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(4)(B). *See* Judgment, ECF 211. Defendant was sentenced to a 24-month term of imprisonment followed by a 5-year term of supervised release. *See id.* Officer Zhuang testified at the evidentiary hearing that Defendant's term of supervised release commenced on November 7, 2014.

On October 16, 2016, a Second Amended Form 12 was filed, charging Defendant with three violations of the conditions of supervised release. *See* Second Am'd Form 12, ECF 263. With respect to Charges 1 and 3, relating to Defendant's obligation to take polygraphs, the

1 Government dismissed Charge 1 and then-assigned District Judge Ronald M. Whyte declined to
2 find a violation based on Charge 3. *See* Minute Entries, ECF 251 & 264. With respect to Charge
3 2, Judge Whyte found that Defendant had violated the terms of supervised release and he
4 sentenced Defendant to 50 hours of community service. *See* Minute Entry, ECF 267. Charge 2
5 alleged that Defendant violated Standard Condition Number 3 of his terms of supervised release,
6 requiring him to follow the instructions of his probation officer. *See* Second Am'd Form 12, ECF
7 263.

The case was reassigned to the undersigned on November 3, 2016. *See* Order Reassigning Case, ECF 266. On June 11, 2018, Probation Officer Zhuang filed the Form 12 that is the subject of this order, charging Defendant with violating Standard Condition Number 3 of his terms of supervised release, requiring Defendant to follow the instructions of his probation officer. Defendant requested an evidentiary hearing, which was held on December 18, 2018. The Government called Probation Officer Zhuang to testify and submitted documentary evidence. Defendant did not testify or submit evidence. At the conclusion of the hearing, Defendant's counsel requested an opportunity to submit a post-hearing brief, and the Government requested an opportunity to respond to any such brief. The Court granted both requests. Defendant's post-hearing brief was filed on January 8, 2019, and the Government's response brief was filed on January 22, 2019. The matter thereafter was submitted for decision.

## II. LEGAL STANDARD

"[A] district court may revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *United States v. Lomayaoma*, 86 F.3d 142, 146 (9th Cir. 1996) (internal quotation marks and citation omitted); *see also* 18 U.S.C. § 3583(e)(3) (setting forth requirements for revoking supervised release). Revocation of supervised release is reviewed for abuse of discretion. *Lomayaoma*, 86 F.3d at 146.

## III. DISCUSSION

The June 11, 2018 Form 12 contains one charge, Charge 1, alleging that Defendant violated Standard Condition Number 3 of the terms of supervised release. Standard Condition

Number 3 provides that: "The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." Judgment at 3, ECF 211. The Form 12 alleges that Defendant violated Standard Condition Number 3 by failing to follow Probation Officer Zhuang's instructions on multiple occasions: (1) on August 14, 2017, Defendant refused an instruction to complete a Post-Conviction Risk Assessment ("PCRA") questionnaire; (2) on January 9, 2018, Defendant refused an instruction to sign the United States Probation System Offender Notice and Acknowledgement of Duty to Register as a Sex Offender; (3) on December 18, 2017, Defendant refused an instruction to report to the probation office for a cell phone inspection, and although Defendant later submitted his cell phone for a manual inspection during a home visit, he refused to allow a cell phone inspection device to be connected to his cell phone; (4) on May 24, 2018, Defendant again refused an instruction to complete the PCRA questionnaire; and (5) on June 2, 2018, Defendant refused an instruction to provide proof of sex offender registration. Form 12 at 3, ECF 297.

### A. Refusal to Complete PCRA Questionnaire

Probation Officer Zhuang testified that Defendant refused her instructions to complete a PCRA questionnaire on August 14, 2017, and again on May 24, 2018. A copy of the PCRA questionnaire was admitted as Government's Exhibit 2. Defendant stated that he was concerned that information he provided in the PCRA questionnaire would be used against him.

Officer Zhuang stated that the PCRA questionnaire, which was implemented in 2010 and is used nationally, must be completed annually by all individuals on supervised release. Part 1 of the PCRA asks the offender to respond to eighty statements by circling a number – 1, 2, 3, or 4. The number 1 indicates "disagree," 2 indicates "uncertain," 3 indicates "agree," and 4 indicates "strongly agree." *See* Gov't Exh. 2. Officer Zhuang testified that Part 2 of the PCRA, which is not included in the Government's Exhibit 2, asks the probation officer to fill in basic information about the offender such as marital status, criminal history, substance abuse history, and the like. The probation officer enters the information from the PCRA into a computer database, which provides a risk category for the offender – high, moderate, low moderate, or low. After the information from the PCRA is entered into the database, Part 1 containing the offender's

3

responses is shredded.

On cross-examination, defense counsel elicited testimony from Officer Zhuang that Defendant automatically was placed in the high risk category because of his conviction offense. Defense counsel suggested that as a result there was no need to require Defendant to complete the PCRA questionnaire.

On redirect examination, Officer Zhuang testified that in addition to providing a risk category, the PCRA questionnaire indicates dynamic risk factors, such as cognition, peer influences, substance abuse, and employment, which may be helpful in treatment of the offender. Officer Zhuang testified that the PCRA is used only as a treatment tool, and that it cannot be used as the basis for a supervised release violation.

On recross-examination, defense counsel challenged Officer Zhuang's statement that the PCRA cannot be used against the offender. Counsel asked whether Defendant has been given legal immunity for his responses to the PCRA questionnaire, and whether Officer Zhuang would be required to testify regarding her recollection of his responses to the questionnaire if subpoenaed. Officer Zhuang stated that she did not understand the questions, at which point defense counsel dropped the line of inquiry. However, counsel then argued to the Court that, despite Officer Zhuang's testimony regarding the manner in which the PCRA questionnaire is used, Defendant cannot be penalized for failing to complete it because it might be incriminating.

Defendant relies on the Ninth Circuit's decision in *United States v. Antelope*, which involved a defendant convicted of possession child pornography who was required to participate in a sexual abuse treatment program as a condition of probation and later as a condition of supervised release. *United States v. Antelope*, 395 F.3d 1128, 1131-32 (9th Cir. 2005). The program required the defendant, Antelope, to disclose his full sexual history, including all past sexual criminal offenses. *Id*. When Antelope refused to comply on Fifth Amendment grounds, the district court revoked his probation and later revoked his supervised release. *Id*. On appeal, the Ninth Circuit held that in order to establish his Fifth Amendment claim, Antelope had to prove that (1) the testimony desired by the government carried the risk of incrimination, and (2) the penalty he suffered for refusing to provide the testimony amounted to compulsion. *Id*. at 1134.

4

With respect to the first prong of the test, the Ninth Circuit held that "[t]he Fifth Amendment privilege is only properly invoked in the face of 'a real and appreciable danger of self-incrimination.'" *Antelope*, 395 F.3d at 1134 (quoting *McCoy v. Comm'r*, 696 F.2d 1234, 1236 (9th Cir. 1983)). That requirement was met because "Antelope's risk of incrimination was 'real and appreciable.'" *Id*. at 1135. The Ninth Circuit inferred from Antelope's "steadfast refusal to comply" that his sexual history would reveal past sex crimes. *Id*. The Ninth Circuit also presumed that "any admissions of past crimes would likely make their way into the hands of prosecutors." *Id*. The Ninth Circuit found that the second prong of the test also was met, as Antelope was sentenced to a longer prison term because he refused to comply with the program's disclosure requirements. *Id*. at 1138. Under those circumstances, the Ninth Circuit held that revocation of Antelope's probation and supervised release for failure to comply with the sex offender program violated his Fifth Amendment right against self-incrimination. *Id*. at 1139.

The present case is factually distinguishable from *Antelope*. Completing the PCRA questionnaire does not require Defendant to reveal past crimes or indeed any specific conduct. The questionnaire asks Defendant to indicate his feelings of agreement or disagreement in response to eighty statements. Defendant argues that those responses potentially could be incriminating, citing statement 13 ("The more I got away with crime the more I thought there was no way the police or authorities would ever catch up with me"), statement 15 ("I have helped out friends and family with money acquired illegally"), statement 33 ("On the streets I would tell myself I needed to rob or steal in order to continue living the life I had coming,"), statement 45 ("I have justified selling drugs, burglarizing homes, or robbing banks by telling myself that in [sic] didn't do it someone else would"), statement 50 ("When I commit a crime or act irresponsibly I will perform a 'good deed' or do something nice for someone as a way of making up for the harm I have caused"), and statement 71 ("I have told myself that I would never have had to engage in crime if I had had a good job"). However, responding with a 1, 2, 3, or 4, indicating agreement or disagreement with these statements, would not incriminate Defendant in the manner described in *Antelope*. "[B]ecause the Fifth Amendment's self-incrimination clause was designed to effect the practical and beneficent purpose of preventing inquisitorial interrogation, it may only be invoked

5

United States District Court
Northern District of California

when the threat of future criminal prosecution is reasonably particular and apparent." *Antelope*, 395 F.3d at 1134. An offender's responses to the types of statements highlighted by Defendant does not satisfy this requirement.

Moreover, while the Ninth Circuit presumed that Antelope's disclosures regarding his sexual history, including past crimes, would be transmitted to prosecutors, there is no evidence in this record indicating that Defendant's responses to the PCRA questionnaire would be transmitted anywhere. To the contrary, Officer Zhuang testified that after being input into the database, the offender's responses are shredded; that the questionnaire is used only as a treatment tool; and that the questionnaire cannot be used as a basis for revoking supervised release. Based on this record, this Court cannot find that requiring Defendant to complete the PCRA questionnaire, which was implemented almost twenty years ago and is used nationally as a probation tool, violated Defendant's Fifth Amendment rights.

Accordingly, the Court finds that the Government has proved by a preponderance of the evidence that Defendant violated Standard Condition Number 3 when he refused to complete the PCRA questionnaire at Officer Zhuang's request.

### B. Refusal to Sign Notice and Acknowledgment of Duty to Register

Officer Zhuang testified that on January 9, 2018, Defendant refused her instruction to sign the United States Probation System Offender Notice and Acknowledgement of Duty to Register as a Sex Offender ("Notice and Acknowledgement"). A copy of the Notice and Acknowledgement was admitted as Government's Exhibit 3. By signing Option B, which was the portion Defendant was asked to sign, an offender acknowledges that: he has a duty to register as a sex offender under state law; currently, the State of California cannot accept registration pursuant to the federal Sex Offender Registration and Notification Act of 2006 ("federal Act"); he has a duty to maintain contact with his probation officer to determine if and when California will accept such registration under the federal Act; and if his federal supervision is transferred to another district, his duty to register under the federal Act will be governed by that district's policy and the laws of that state. Gov't Exh. 3. Officer Zhuang testified that the Notice and Acknowledgement was implemented in December 2017 and that it is used nationally. She stated that Defendant did not want to sign the

Notice and Acknowledgment because he did not want to agree to the language contained therein. She believed he was concerned about appearing to agree to a future change in California state law.

On cross-examination, defense counsel questioned Officer Zhuang about why Defendant was required to sign the Notice and Acknowledgement when California had not yet adopted the federal Act and when Defendant clearly knows he has to register as a sex offender every year and does so. The thrust of the questions suggested that requiring Defendant to sign the Notice and Acknowledgment was unnecessary. Officer Zhuang stated that the purpose of the form was to advise offenders about the current obligation to register as a sex offender, and to advise them of a potential future change in California state law which could affect that obligation.

To the extent that Defendant's position is that completing the Notice and Acknowledgement is unnecessary, Standard Condition Number 3 requires Defendant to "follow the instructions of the probation officer," not the instructions of the probation officer that *Defendant* deems necessary. Judgment at 3, ECF 211. In his post-hearing brief, Defendant argues without citation to evidence or authority that "Mr. Roller also had a right not to incriminate himself by completing the duty to register form." Def.'s Brief at 6-7, ECF 308. Defendant argues that if signed, the Notice and Acknowledgment "would like be Exhibit A in the prosecution's case if he was to be charged with failure to register as a required in the future." *Id*. Defendant's speculation as to the potential future use of the Notice and Acknowledgement, in the event that California were to change it sex offender registration requirements *and* Defendant were to violate those requirements, does not satisfy the standards set forth in *Antelope* and discussed above. In order to demonstrate that requiring him to sign the Notice and Acknowledgement violated his Fifth Amendment rights, Defendant would have to show at minimum that signing would result in a reasonably particular and apparent threat of future criminal prosecution. *See Antelope*, 395 F.3d at 1134. He has not done so here.

The Court finds that the Government has proved by a preponderance of the evidence that Defendant violated Standard Condition Number 3 when he refused to sign the United States Probation System Offender Notice and Acknowledgement of Duty to Register as a Sex Offender at Officer Zhuang's request.

**C. Refusal to Report for Cell Phone Inspection**

Officer Zhuang testified that on December 18, 2017, Defendant refused an instruction to report to the probation office for a cell phone inspection. Officer Zhuang spoke to Defendant by telephone, and he told her that he is not subject to cell phone inspection. Officer Zhuang referred Defendant to Special Condition Number 2 of his supervised release, which provides as follows:

> 2. The defendant shall not own any computer except as approved by the Probation Officer. All computers, computer-related devices, including, but not limited to, personal computers, personal data assistants (PDAs), Internet appliances, electronic games, and *cellular telephones, as well as their peripheral equipment, that can access, or can be modified to access, the Internet*, electronic bulletin boards, and other computers, or similar media and their peripheral equipment, used by the defendant, shall be subject to search and seizure and the installation of search and/or monitoring software and/or hardware, including unannounced seizure for the purpose of search. The defendant shall not add, remove, upgrade, update, reinstall, repair, or otherwise modify the hardware or software on the computers, computer-related devices, or their peripheral equipment, nor shall he hide or encrypt files or data without prior approval of the Probation Officer. Further, the defendant shall provide all billing records, including telephone, cable, Internet, satellite, and the like, as requested by the Probation Officer.

Judgment at 4, ECF 211 (emphasis added). Officer Zhuang testifiedk that Defendant responded by stating that because his cell phone is not connected to the internet, Special Condition Number 2 does not apply. Defendant stated that Special Condition number 1 controls, and that because Officer Zhuang lacked reasonable suspicion, Defendant was not subject to cell phone inspection. Special Condition Number 1 reads as follows:

> 1. The defendant shall submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, with or without a warrant, by any law enforcement or Probation Officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. Failure to submit to such a search may be grounds for revocation; the defendant shall warn residents that the premises may be subject to searches.

Judgment at 4, ECF 211.

Officer Zhuang testified that on April 6, 2018, she and two other officers went to Defendant's home. At that time Defendant permitted Officer Libby, who is certified to inspect electronics and cell phones and computers, to do a manual inspection of his cell phone. Officer Zhuang testified that Defendant has a flip phone which has the capacity to be connected to the Internet, but that Defendant does not have a data plan. Nothing of concern was found on

8

1 Defendant's cell phone during the manual inspection. However, Defendant refused to let Officer
2 Libby connect his cell phone to a cell phone inspection machine.

Defendant's cell phone is subject to inspection under Special Condition Number 2, which specifically provides for search of "cellular telephones, as well as their peripheral equipment, that can access, or can be modified to access, the Internet." Officer Zhuang testified that Defendant's cell phone has the capacity to connect to the Internet. The fact that Defendant does not have a data plan does not exempt his cell phone from Special Condition Number 2 under the clear language of the condition providing for search of cell phones that *either* can access *or* be modified to access the Internet. There is no requirement of reasonable suspicion for a search of Defendant's cell phone under Special Condition Number 2. Accordingly, Defendant had no basis for refusing Officer Zhuang's instruction to come into the probation office for a cell phone inspection, or for refusing to permit his cell phone to be connected to an inspection machine.

The Court finds that the Government has proved by a preponderance of the evidence that Defendant violated Standard Condition Number 3 when he refused Officer Zhuang's request that he go into the probation office for a cell phone inspection, and when he refused to permit his cell phone to be connected to an inspection machine.

### D. Refusal to Provide Proof of Sex Offender Registration

Officer Zhuang testified that on June 2, 2018, Defendant refused an instruction to provide proof of sex offender registration. He told her that she should already have that information and that it was redundant for her to ask him for it. Officer Zhuang then checked with local law enforcement and confirmed that Defendant had registered. Defendant concedes that he refused Officer Zhuang's instruction to provide her with proof of registration.

The Court finds that the Government has proved by a preponderance of the evidence that Defendant violated Standard Condition Number 3 when he refused Officer Zhuang's request that he provide her with proof of his sex offender registration.

### E. Future Proceedings

Based on this record, it appears to the Court that Defendant has demonstrated a consistent pattern of refusing to comply with his probation officer's instructions, in violation of Standard

1 Condition Number 3. At the evidentiary hearing, Defendant's counsel explained to the Court that
2 Defendant will comply with the probation officer's instructions, but only if it is clear to Defendant
3 that he must do so. The Court pointed out that Standard Condition Number 3 does not state that
4 Defendant is required to follow only those instructions that he thinks make sense. In fact,
5 Standard Condition Number 3 does not even limit Defendant's obligation to follow the probation
6 officer's instructions to reasonable instructions or instructions that will provide valuable
7 information. The condition requires Defendant to "follow the instructions of the probation
8 officer." Judgment at 3, ECF 211. Going forward, Defendant may wish to consider the breadth of
9 that condition when deciding whether to refuse his probation officer's instructions.

With respect to the violations of Standard Condition Number 3 described above, the Government requests that the Court modify Defendant's supervised release by imposing an additional year of supervision. Defendant requests that if the Court finds that he violated the terms of supervised release, the Court impose either no penalty, community service, or house arrest. The Court is not prepared to decide at this time what penalty, if any, should be imposed as a result of Defendant's violations of the terms of his supervised release. The Court sets a sentencing hearing for June 4, 2019 at 9:00 a.m.

**IV. ORDER**

(1) The Court finds that the Government has proved by a preponderance of the evidence that Defendant violated Standard Condition Number 3 of the terms of his supervised release, as set forth in Charge 1 of the June 11, 2018 Form 12; and

(2) Sentencing on that violation is set for June 4, 2019 at 9:00 a.m.

Dated: March 28, 2019

_____
BETH LABSON FREEMAN
United States District Judge